IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INTERNATIONAL PAINTERS AND
ALLIED TRADES INDUSTRY
PENSION FUND, *et al.*,
    *Plaintiffs,*

v.

MILLER PAINTING CO., INC.,
    *Defendant.*

Civil No. ELH-24-3441

## MEMORANDUM OPINION

This case arises under the Employee Income Security Act of 1974 ("ERISA"), codified as amended at 29 U.S.C. §§ 1001 *et seq.* On November 27, 2024, plaintiffs International Painters and Allied Trades Industry Pension Fund; International Painters and Allied Trades Annuity Plan; Daniel Williams, Trustee of the Pension Fund and the Annuity Plan; Finishing Trades Institute; Finishing Trades Institute of the International Painters and Allied Trades District Council 77; and Southern Painters Welfare Fund, along with its trustees, Paul Canning and Bruce Wohl, filed suit against Miller Painting Co., Inc. ("Miller Painting"). *See* ECF 1 (the "Complaint"). Plaintiffs allege that Miller Painting failed to meet its obligations under certain labor agreements, requiring it to make financial contributions to various pension funds and annuity plans.

I shall refer to Southern Painters Welfare Fund ("Welfare Fund") and Finishing Trades Institute of the International Painters and Allied Trades District Council 77 ("FTI Council 77") collectively as the "SP Plaintiffs." I will refer to International Painters and Allied Trades Industry Pension Fund ("Pension Fund"); International Painters and Allied Trades Annuity Plan ("Annuity Plan" or "IUPAT Annuity Plan"); and the Finishing Trades Institute ("FTI") collectively as the "IUPAT Plaintiffs."

Miller Painting, a Georgia corporation, is an employer within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and the National Labor Relations Act ("NLRA"), § 2(2), 29 U.S.C. § 152(2).  *See* ECF 1, ¶ 7.  It employs members of one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades (the "Union" or "IUPAT").  *See id.* ¶ 18.  Plaintiffs assert that Williams is a fiduciary of the Pension Fund and the Annuity Plan under 29 U.S.C. § 1002(21).  *Id.* ¶ 3.  Similarly, they allege that Canning and Wohl are fiduciaries of the Welfare Fund.  *Id.* ¶ 6.

Plaintiffs use the term "Bargained Entities" in the Complaint.  *See* ECF 1, ¶ 20.  But, they do not define the term.  However, plaintiffs define the "IUPAT Bargained Entity" to include the Political Action Together Legislative and Educational Committee and the Political Action Together Political Committee (collectively, "PAT Fund").  *Id.* ¶ 8.  According to plaintiffs, the PAT Fund "is an unincorporated association or fund" established by the Union, pursuant to 52 U.S.C. § 30101 *et seq.*, "for the purpose of advancing the political interests of its members by lawfully influencing the selection, nomination, election and/or appointment of individuals for political office."  *Id.*

Plaintiffs define the "IUPAT Funds" to include the IUPAT Plaintiffs, the IUPAT Bargained Entity, and Williams.  *Id.* ¶ 9.  They define the "SP Funds" to include Canning, Wohl, and the SP Plaintiffs.  *Id.* ¶ 11.  The term "Funds" refers to a combination of both the IUPAT Funds and the SP Funds.  *Id.* ¶ 12.

According to plaintiffs, the Funds, the Pension Plan, and the Annuity Plan are all "employee benefit plans" within the meaning of ERISA.  *See id.* ¶¶ 1, 2, 4, 5.  In particular, plaintiffs claim that defendant failed to meet its obligations under certain labor agreements to make contributions to the IUPAT Plaintiffs, the SP Plaintiffs, the "Bargained Entities," and the Union,

based on hours worked by defendant's employees. *Id*. ¶ 20. They seek to recover a sum of at least $2,605,306.99 in unpaid contributions to the IUPAT Funds and at least $3,761,237 to the SP Funds; any additional amounts that become due and owing during the pendency of this litigation; liquidated damages; interest; and costs associated with this action, including attorney's fees. *Id.* ¶¶ 30–33; *see also id.* at 10–11.[1] Plaintiffs also "reserve the right to conduct an audit or a further audit to determine whether there are any additional amounts due from Defendant." *Id.* ¶ 28.

Plaintiffs assert that this Court has jurisdiction "by virtue of the Labor Management Relations Act ('LMRA') § 301, 29 U.S.C. § 185 . . . ." ECF 1, ¶ 14. They explain that "the Funds seek to enforce the terms and conditions of a valid collective bargaining and/or other labor agreement." *Id.* And, they assert supplemental jurisdiction under 29 U.S.C. § 1367 as to any claim that "does not exist under ERISA or the LMRA . . . ." *Id.* ¶ 15.

Further, plaintiffs claim that, under 29 U.S.C. § 1132, suit may be brought, at the "Funds' discretion, in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." *Id.* ¶ 16. In this regard, they assert that venue is proper in Maryland because the Pension Fund is administered in this State, *id.*, and "the SP Fund's claims arise from the same bargaining agreements, audit, missing reports, statutory provisions and other facts and laws as the claims by the IUPAT Funds. The Funds also request identical relief under the same statutory provisions." *Id.*

Defendant has moved to transfer the case (ECF 5), supported by a memorandum (ECF 5-1) (collectively, the "Motion"). Pursuant to 28 U.S.C. § 1404(a), defendant asks the Court to transfer the case to the United States District Court for the Southern District of Georgia.

---

[1] Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not necessarily correspond to the page number imprinted on a particular submission.

Specifically, Miller Painting contends that "[t]he balance of the factors," including "[w]itness convenience and access, the convenience of the parties, and the interests of justice, as well as the fact that the matter might have been brought in the destination venue, support transfer." ECF 5-1 at 2. Defendant argues that plaintiffs support their choice of venue based "only [on] the fact that the IUPAT funds are administered in Hanover, Maryland." *Id.* In the Complaint, plaintiffs "assert that the claims arise out of collective bargaining agreements, plan audits, and reporting of Miller Painting conducted outside of Hanover, Maryland." *Id*.

With the Motion, defendant has included the Declaration of Ralph David Miller, the Chief Executive Officer of Miller Painting. ECF 5-3. Defendant has also included a purported collective bargaining agreement, discussed *infra*. ECF 5-2. Plaintiffs oppose the Motion. ECF 13 (the "Opposition"). Defendant has replied. ECF 17 (the "Reply"). Defendant appends an additional declaration by Ralph David Miller with the Reply. ECF 17-1.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I will transfer the case to the District Court for the Southern District of Georgia.

## I.    Background

Miller Painting is a party to, "or agreed to abide by," certain collective bargaining or other labor agreements ("Bargaining Agreement" or "CBA") with one or more local union(s) or district council(s) "affiliated with" the Union. ECF 1, ¶ 18. Pursuant to the terms of the CBA, defendant is "bound to the governing documents" of plaintiffs (the "Trust Agreements"). *Id.* ¶ 19. The Trust Agreements are incorporated into the Bargaining Agreement. *Id*. Defendant is required by these agreements to make timely contributions to the IUPAT Plaintiffs, the SP Plaintiffs, the Bargained Entities, and the Union, the sums of which are determined by the hours worked by defendant's employees. *Id.* ¶ 20. If defendant is delinquent on these payments, it is required, pursuant to the

Bargaining Agreement and Trust Agreements, to pay liquidated damages for each belated contribution, as well as interest. *Id.* ¶ 21. The agreements also require defendant to maintain "timecards" to be submitted, along with all relevant records, to the IUPAT Funds and the SP Funds. *Id.* ¶ 22. This is done so that the IUPAT Funds and the SP Funds can determine whether defendant has made full and prompt payments. *Id.* According to plaintiffs, if an audit reveals that such full and prompt payments were not made, then defendant is required to reimburse the IUPAT Funds and the SP Funds for these amounts, along with payment of audit fees and attorneys' fees. *Id.*

The Complaint contains a "First Cause Of Action," lodged by the IUPAT Funds and the SP Funds, seeking payment of delinquent contributions, interest, liquidated damages, audit costs, and attorneys' fees and costs. ECF 1 at 8. It is the only claim in the suit. Plaintiffs allege that defendant "has a contractual duty to timely pay the required contributions to [the] Funds pursuant to the terms of the Bargaining Agreement and Trust Agreements." *Id.* ¶ 34. Moreover, plaintiffs assert that defendant "has a statutory duty to timely make the required payments to the Funds, including those found due by the Funds' audits, under ERISA § 515, 29 U.S.C. § 1145, and LMRA § 301(a)." *Id.* ¶ 35.

Plaintiffs contend that they have performed audits of the defendant's payroll records for the period January 1, 2019 through December 31, 2023. *Id.* ¶¶ 23, 24, 30, 31. According to plaintiffs, the audits reflect that Miller Painting failed to report and pay $2,605,306.99 to the IUPAT Funds and $3,761,237 to the SP Funds. *Id.* ¶¶ 23, 24, 30, 31. And, plaintiffs contend that defendant "has also failed to pay contributions and/or contribution shortages" to the IUPAT Funds and the SP Funds "as due" for September 2021 through December 2021. *Id.* ¶¶ 26, 33.

Plaintiffs seek a "declaration" that defendant "failed to comply with the Bargaining Agreement and Trust Agreements by failing to report and pay contributions to the Funds, including

as found due by payroll audit." ECF 1 at 10, ¶ 1. Plaintiffs also seek monetary damages in the form of "[a]ny unpaid contributions, due at time of Judgment"; "[l]iquidated damages on all unpaid and late-paid contributions in an amount provided for under the Bargaining and Trust Agreements, and with respect to the ERISA Plaintiffs, ERISA § 502(g)(2)(c), 29 U.S.C. § 1132(g)(2)(c)"; "[i]nterest on all late-paid and unpaid contributions . . . ."; as well as reasonable attorneys' fees, costs of suit, and audit fees. *Id*. at 10–11, ¶ 2.

In addition, plaintiffs seek injunctive relief in the form of an order, *inter alia*: (a) requiring defendant to comply with its obligations to the Funds under the Bargaining Agreement and the Trust Agreements; (b) enjoining defendant from violating the terms of the Bargaining Agreement, the Trust Agreements, and ERISA; and (c) enjoining defendant from disposing of any assets "until said terms" have been satisfied. *Id.* at 11, ¶ 3.

## II.    Standard of Review

Pursuant to 28 U.S.C. § 1404(a), defendant has moved to transfer venue to the Southern District of Georgia (Savannah Division). ECF 5. Plaintiffs ask the Court to deny the Motion because it "is factually and legally unsupported." ECF 13 at 9. They assert: "Once a fund has chosen a permissible venue, the choice will not be disturbed absent exceptional circumstances. This modification to the traditional venue analysis ensures that ERISA's intent is not disturbed and that funds are not forced to litigate in a different federal district each time they sue an employer. Defendant appears to have missed this issue." *Id.* (emphasis in ECF 13).

Section 1132(e)(2) of 29 U.S.C. governs venue in an ERISA case.[2] It provides that a suit "may be brought in the district where the plan is administered, where the breach took place, or

_____

[2] Ordinarily, "the venue of all civil actions" filed in federal district court is governed by 28 U.S.C. § 1391. Under § 1391(b), venue exists in:

where a defendant resides or may be found[.]" *Id*. And, 28 U.S.C. § 1404(a) is also relevant. It provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a).

The plaintiff bears the burden of demonstrating that the choice of venue is appropriate. *Bartholomew v. Virginia Chiropractors Ass'n*, 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938 (1980), *overruled on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982); *accord Tinoco v. Thesis Painting, Inc.*, GJH-16-752, 2017 WL 52554, at *2 (D. Md. Jan. 3, 2017); *Jones v. Koons Auto. Inc.*, 752 F. Supp. 2d 670, 679 (D. Md. 2010). On the other hand, under § 1404(a), the moving party bears the burden of showing, by a preponderance of the evidence, that transfer to another venue is proper. *See Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 607 (D. Md. 2014); *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 770 (D. Md. 2009); *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

If the court does not hold an evidentiary hearing, "the plaintiff need only make a prima facie showing that venue is proper." *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). "In assessing whether there

---

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

has been a prima facie venue showing, [the court views] the facts in the light most favorable to the plaintiff." *Aggarao v. MOL Ship Management Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012).

The Fourth Circuit has recognized that "it is possible for venue to be proper in more than one judicial district." *Mitrano*, 377 F.3d at 405. Thus, "the question is not whether a given district is the best venue, but whether the events or omissions that occurred there are 'sufficiently substantial.'" *Carefirst*, 235 F. Supp. 3d at 732 (quoting *Mitrano*, 377 F.3d at 405). In considering "whether events or omissions are sufficiently substantial to support venue . . ., a court should not focus only on those matters that are in dispute or that directly led to the filing of the action." *Mitrano*, 377 F.3d at 406. Instead, "it should review 'the entire sequence of events underlying the claim.'" *Id.* (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)); *accord Taylor v. Shreeji Swami, Inc.*, PWG-16-3787, 2017 WL 1832206, at *1 (D. Md. May 8, 2017); *Convergence Management Associates, Inc. v. Callender*, TDC-15-4015, 2016 WL 6662253, at *2 (D. Md. Nov. 10, 2016).

Section 1404(a) "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). This helps "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Id.* (citation omitted); *see International Painters and Allied Trade Industry Pension Fund v. Marrero Glass & Metal Inc.*, ELH-18-0452, 2019 WL 423409, at *2 (D. Md. Feb. 1, 2019). Put another way, § 1404 enables the courts to "prevent plaintiffs from abusing their privilege under [28 U.S.C.] § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).

Based on the statutory language, the standard for a § 1404(a) transfer can be distilled, as follows: "(1) the transferee court must be a court in which the action could have been brought initially; (2) the transfer must be convenient to the parties and witnesses; and (3) the transfer must be in the interest of justice." *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D. Md. 2002). Thus, "[a] motion to transfer under § 1404(a) . . . calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *see Marrero Glass & Metal Inc.*, 2019 WL 423409, at *3. These include: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Tr. of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *see, e.g.*, *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008); *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005); *Lynch*, 237 F. Supp. 2d at 617. Other factors include the "local interest in having localized controversies settled at home" and the "appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action." *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004).

With respect to hardship on witnesses and parties, in order for the movant to meet its burden, "the movant should submit, for example, affidavits from witnesses and parties explaining the hardships they would suffer if the case were heard in the plaintiff's chosen forum." *Dow*, 232 F. Supp. 2d at 499 (citing *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 712 (D. Md. 2002)). As Judge Blake observed in *Dow*, 232 F. Supp. 2d at 499, where the movant only provides "[m]ere assertions of inconvenience or hardship," it will not have met its burden.

Ultimately, however, "[t]he decision whether to transfer venue is committed to the sound discretion of the trial court." *Mamani*, 547 F. Supp. 2d at 469; *see Volkswagen*, 545 F.3d at

312 ("'There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'"); *see also Plumbing Servs., Inc.*, 791 F.3d at 443; *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

Section 1406(a) of 28 U.S.C. is also pertinent. It states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

### III.    Discussion[3]

#### A.

Under 28 U.S.C. § 1404(a), the "preliminary" inquiry focuses on whether the civil action "might have been brought in the destination venue." *In re: Volkswagen*, 545 F.3d at 312 (internal quotations omitted). In order to satisfy that requirement, venue in the transferee court must be proper, and that court must have personal jurisdiction over the defendant. *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009).

As stated, an ERISA case "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found[.]" 29 U.S.C.

---

[3] Plaintiffs have other cases pending before this Court. In one, I recently concluded that the SP Plaintiffs could not establish venue in Maryland, and I transferred the case to the Eastern District of Arkansas. *See Int'l Painters & Allied Trades Indus. Pension Fund v. McCormick Painting Co., Inc.* ("*McCormick*"), ELH-24-2621, 2025 WL 895391 (D. Md. Mar. 24, 2025). In that case, plaintiffs made essentially the same arguments and cited the same cases as they do here. Although the Motion in this case was briefed before I ruled in *McCormick*, plaintiffs did not ask to file a surreply in this case to address the reasoning of the Court's Memorandum Opinion in *McCormick*.

I incorporate here much of the legal standard set forth in *McCormick*. In addition, I apply much of the analysis contained in *McCormick*.

§ 1132(e)(2).  The IUPAT Funds maintain their principal place of business in and are administered in Maryland.  ECF 13 at 11.  The SP Funds maintain their principal place of business in and are administered from Tennessee.  *Id*. at 12.

With respect to the IUPAT Plaintiffs, venue is proper in Maryland.  But, as to the SP Plaintiffs, plaintiffs essentially concede that the SP Plaintiffs appear to have no statutory basis for venue in Maryland under ERISA.  ECF 13 at 34.  Nevertheless, they claim:  "Venue extends to the SP Funds via the doctrine of pendent venue . . . .", discussed *infra*.  *Id*.

Venue is proper in the Middle District of Tennessee, but only as to the SP Plaintiffs, because the SP Funds are administered there.  There does not appear to be any basis for venue in Tennessee for the IUPAT Plaintiffs, because the IUPAT Funds are not administered there, defendant does not reside there, and neither side claims that the alleged breach took place there.

However, plaintiffs contend that venue is proper in Maryland as to all parties.  *Id*. at 11.  They assert, *id*.:  "This Court has routinely recognized the pendant [sic] venue doctrine, which allows the Court to retain venue for claims that are otherwise without venue, so long as venue is proper for other claims that are substantially related or similar."  *Id*.  Plaintiffs insist that their "claims fall squarely within the doctrine."  *Id*.

According to plaintiffs, they may establish "venue over other federal law claims after venue as to the principal federal law claim has been established so long as all claims arise from the same nucleus of facts."  *Id.* at 15 (citing *Miller v. Asenio*, 101 F. Supp. 2d 395, 409 (D. S.C. 2000)).  To that point, plaintiffs maintain that the "issues, claims and laws to be adjudicated are the exact same for the IUPAT Funds and the SP Funds."  ECF 13 at 36 (emphasis removed).  They posit that "the audits for the IUPAT Funds and the SP Funds revolved around the same employees, the number

of hours those employees worked and their contractual contributions," and the "authority to conduct these audits arose under the exact same Bargaining Agreements." *Id.*

Moreover, plaintiffs argue that the legal claims and requested relief are identical for all plaintiffs. *Id.* at 36. They maintain that the "motivations or touchstones of pendent venue are to preserve judicial economy, prevent piecemeal litigation, and promote convenience and fairness[.]" *Id.* at 37. Given that the Funds "used the same auditor to conduct their audits and will be using many of the same witnesses to prove their claims," plaintiffs argue: "It is hard to envision circumstances more warranting or deserving of application of the pendent [sic] venue doctrine." *Id.* In their view, "these considerations demonstrate why the pendent venue [doctrine] should apply . . . ." *Id.*

In support of plaintiffs' position in regard to pendent venue, they rely, *inter alia*, on *Coastal Labs, Inc. v. Jolly*, 502 F. Supp.3d 1003 (D. Md. 2020). Their reliance is misplaced.

In that case, two plaintiffs brought suit against a number of doctors and corporations with regard to their conduct as it related to "Plaintiffs' efforts to acquire [COVID-19] medical testing laboratories to assist their infection control management program designed specifically for nursing homes." *Id.* at 1011. Unlike in this case, the claims involved common law business torts with no statutory venue provisions. *Id.* at 1023–24. Accordingly, the court considered jurisdiction under 28 U.S.C. § 1391(b), which provides for venue where "a substantial part of the events or omissions giving rise to the claim occurred." *Id*. at 1023 (quoting 28 U.S.C. § 1391(b)). Based on the plaintiffs' allegations, the court found venue in Maryland. *Id.* at 1024.

Plaintiffs also rely, *inter alia*, on *Abissi v. United States Citizenship & Immigration Services*, JKB-23-03176, 2024 WL 1485887 (D. Md. Apr. 5, 2024), to argue that the Court should apply the pendent venue doctrine. But, *Abissi* is also inapposite.

12

In *Abissi*, seven individual plaintiffs, two of whom were residents of Maryland, brought suit under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  *Abissi*, 2024 WL 1485887, at *2.  In determining whether venue in Maryland was proper, the court pointed to FOIA's venue provision, which provides that venue "lies only in the district in which the records that the plaintiff wishes 'to enjoin the agency from withholding' 'are situated.'"  *Id*. (quoting 5 U.S.C. § 552(a)(4)(B)).  But, plaintiffs asked the court to apply the pendent venue doctrine, which the court described as follows:  "Pendent venue is a discretionary, judge-made doctrine that permits a court to hear claims for which venue does not properly lie in the district when they are closely related to claims for which venue is proper."  *Id*.  The court declined to invoke pendent venue, explaining: "Courts are hesitant to employ pendent venue when, as here, Congress has enacted a special venue provision for the [FOIA] claim at issue."  *Id*.

The same rationale applies here.  The ERISA statute expressly governs venue, and it does not carve out the exception that plaintiffs advance.

The case of *Local 8A-28A Welfare & 401(K) Retirement Funds v. Golden Eagles Architectural Metal Cleaning & Refinishing*, 277 F. Supp. 2d 291 (S.D.N.Y. 2003), is also distinguishable.  *Id.*  That case involved multiple funds that brought an ERISA action in the Southern District of New York.  The court declined to dismiss the ERISA claims for improper venue.  But, the plaintiffs alleged that *both* Funds were administered in the Southern District of New York, where the suit was filed.  *Id.* at 295–96.

The other cases to which plaintiffs cite are ones in which plaintiffs sued defendants alleging federal claims in the proper venue of a federal district court, and they also sought to bring state law claims arising from the same nucleus of operative facts in the same litigation.  *See, e.g.*, *Miller*, 101 F. Supp. 2d at 409 (applying pendent venue doctrine as to state-law claims of fraud where the

13

claims arose from the same nucleus of operative fact as the federal claim and venue was already established as proper as to federal claim). These are not analogous to the facts here, where all of plaintiffs' claims are brought under federal law.

Plaintiffs attempt to argue that a breach occurred in Maryland. Citing *McQuennie v. Carpenters Local Union 429*, 2015 U.S. Dist. LEXIS 151470, plaintiffs state that in ERISA actions, "the harm or breach does not occur where the employer failed to make the payments, but rather, 'a breach takes place where the plaintiff was to receive benefits.'" ECF 13 at 22–23 (quoting *McQuennie*, 2015 U.S. Dist. LEXIS 151470, at *5). According to plaintiffs, the alleged breach "occurred in [Maryland] where the Funds would have received the fringe benefit payments from Defendant had they been made, and not in Georgia (where Miller Painting decided not or failed to make the payments)." ECF 13 at 23. But, plaintiffs citation to *McQuennie* is misleading. In that case, plaintiff McQuennie, a beneficiary of pension funds, sued the pension fund for allegedly denying him his pension benefits, in violation of ERISA. *McQuennie*, 2015 U.S. Dist. LEXIS 151470, at *2. The court stated: "Most courts have held that a breach takes place where the beneficiary was to receive benefits." *Id.* at *4. Therefore, in denying the pension fund's motion to transfer, the court concluded that under ERISA's venue provision, the breach took place where McQuennie would have received his pension benefits, not where the fund made the decision to terminate his benefits. *Id.* at *2. The alleged breach in this case is where defendant allegedly failed to make the payment.

In sum, venue in Maryland is proper as to the IUPAT Plaintiffs. But, nothing in the ERISA statute permits the SP Plaintiffs to lodge their claims in Maryland merely because the IUPAT Plaintiffs can properly assert venue in Maryland, and the claims of the SP Plaintiffs happen to involve the same defendant, the same documents, and the same audit. *See* 29 U.S.C. § 1132(e)(2).

Despite the commonality and similarity of the factual allegations and the defendant, venue in this District is improper as to plaintiffs Welfare Fund; FTI Council 10; Canning; and Wohl. Simply put, the SP Funds are not administered in Maryland, no alleged breach occurred in Maryland, and defendant does not reside in Maryland.

There is no ground to dismiss the suit as to the IUPAT Plaintiffs. Indeed, defendant did not seek dismissal. But, the question arises as to what to do in regard to the claims of the SP Plaintiffs, for whom venue in Maryland is improper.

The Court could dismiss the SP Plaintiffs from the case altogether, or sever their claims, under Fed. R. Civ. P. 21. Rule 21 provides: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." If the Court were to dismiss the SP Plaintiffs, they would have to decide whether or where to pursue their claims.

Alternatively, under 28 U.S.C. § 1404, the Court could transfer the SP Plaintiffs' severed claims to a jurisdiction with proper venue. Or, the Court could transfer the entire case to a jurisdiction in which there is proper venue as to all plaintiffs. This is the relief that is sought by defendant.

*Dukes v. Wal-Mart Stores, Inc.*, No. C01-2252 MJJ, 2001 WL 1902806, at *9 (N.D. Cal. Dec. 3, 2001), is instructive. There, the court faced a similar dilemma: some plaintiffs had established proper venue under a statutory venue provision but others had not. *Id*. The court concluded, *id.*: "Dismissal or transfer of the entire action would be too harsh a penalty, especially since two of the six plaintiffs are properly venued here." *Id*. The court cited *Anrig v. Ringsby United,* 603 F.2d 1319, 1324–1325 (9th Cir.1978), in which the Ninth Circuit vacated the district court's dismissal of the entire action for certain improperly venued defendants because "dismissal

of the entire action for improper venue is a penalty too severe . . . ." *Id.* at 1327.  Moreover, in view of the circumstances, the *Anrig* Court reasoned that "such dismissal is improper without a prior investigation of the possibility of dismissing or transferring parties under either [Fed. R. Civ. P.] 21 or 28 U.S.C. 1406(a)." *Id.*  Accordingly, the *Dukes* Court chose to "dismiss the improperly venued plaintiffs, allowing the case and the California plaintiffs to remain if they so choose." *Dukes*, 2001 WL 1902806, at *9.

In another case in this District, the court declined to exercise pendent venue over some of the plaintiff's claims and, instead, transferred the entire case to another court.  *See Holmes-Hamilton v. Fed. Bureau of Investigation*, GJH-21-00702, 2021 WL 5166376, at *4 (D. Md. Nov. 5, 2021).  But, in that case, the parties had "agree[d] that Plaintiffs' cases should remain combined." *Id.*

Here, the parties have not agreed to a similar arrangement.  But, neither side raises the issue of severance or dismissal of a portion of the case.  Defendant seeks transfer of the entire case to the Southern District of Georgia, pursuant to 28 U.S.C. § 1404(a).  ECF 5-1 at 2.  Plaintiffs oppose the request.  ECF 13 at 8.

If I deny the transfer request, I must either dismiss the SP Plaintiffs, without prejudice to their right to refile suit elsewhere, or sever their claims and transfer those claims to a district with venue.  Fed. R. Civ. P. 21, which authorizes severance of parties and/or claims, and 28 USC § 1404(a), governing transfers among federal district courts, "are [both] designed to facilitate just, convenient, efficient, and less expensive determination."  *In re Nintendo of America, Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014); *see also Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022).  I turn to this issue.

## B.

### 1. Severance

The Court first considers whether to sever the SP Plaintiffs and/or their claims, so as to allow the IUPAT Plaintiffs to proceed in Maryland, while the SP Plaintiffs are either dismissed or transferred to another court.

Under Rule 21, a district court has "broad discretion" to sever parties and claims.  *See, e.g.*, *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994); *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983); *see also Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007); *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002); *Deskovic v. City of Peekskill,* 673 F. Supp.2d 154, 159–60 (S.D.N.Y. 2009); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 1689 (4th ed. 2018).  If all the claims cannot be transferred to a single district court, a court may sever the claims and transfer some while allowing the remaining claims to proceed as a separate case.  *See M.M.M. on behalf of J.M.A. v. Sessions*, 319 F. Supp. 3d 290, 295 (D.D.C. 2018); *Pinson v. U.S. Dep't of Justice*, 74 F. Supp.3d 283, 288 (D.D.C. 2014); *see also Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp.2d 48, 57 n.13 (D.D.C. 2012) (severing claims prior to transferring venue under Section 1404(a)).

There is "a presumption in favor of the nonmoving party that all claims in a case will be resolved in a single trial and not be severed, placing the burden on the party moving for severance to show that (1) it will be severely prejudiced without a separate trial; and (2) the issue to be severed is so 'distinct and separable' from the others that a trial of that issue alone may proceed without injustice."  *Hudock v. Kent Cnty. Bd. of Educ.*, CCB-14-2258, 2015 WL 1198712, at *18 (D. Md. Mar. 16, 2015) (quoting *Equal Rights Ctr.*, 483 F. Supp. 2d at 489) (quotation omitted).

In making this determination, courts consider multiple factors, including: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) concerns related to judicial economy, multiplicity of litigation, and orderly and efficient resolution of disputes; (4) the availability of witnesses and other evidentiary proof; and (5) the potential for confusion, undue delay, or prejudice to any party. *See, e.g.*, *M.M.M.*, 319 F. Supp. 3d at 295; *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 24-25 (S.D.N.Y. 2016); *Wultz v. Islamic Republic of Iran*, 762 F. Supp.2d 18, 32-33 (D.D.C. 2011); *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y. 2011); *Kehr ex rel. Kehr v. Yamaha Motor Corp.,* 596 F. Supp.2d 821, 826 (S.D.N.Y. 2008)**;** *Khanna v. State Bar of Cal.,* No. 07-2587, 2007 WL 2288116, at *2-3 (N.D. Cal. Aug. 7, 2007); *M.K.*, 216 F.R.D. at 137–38; *see also Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968), *cert. denied*, 393 U.S. 977 (1968).

For example, in *Defense Distributed v. Bruck*, 30 F.4th at 422–23, plaintiff appealed a district court's severance of its claims against the New Jersey Attorney General ("NJAG") for actions that plaintiff alleged constituted infringement of its rights under the First Amendment, as well as tortious interference with a settlement agreement it had previously reached with the U.S. State Department related to the 3D printing of firearms, and against the State Department for its alleged failure to comply with the Settlement Agreement.  The district court severed the claims upon finding that the State Department was only indirectly connected to the claims lodged against the NJAG and that the administration of justice would not be materially advanced by transfer.  *Id.* at 429.

The Fifth Circuit concluded that the district court's order severing and transferring some claims constituted a "clear abuse of discretion."  *Id.* at 436.  The court highlighted that "the principal claims against both defendants are temporally and factually intertwined to the extent that

litigation in separate courts would largely overlap." *Id.* at 430.  Moreover, the court stated, *id.* at 431:  "[B]ecause of the complex factual interactions among Plaintiffs and these Defendants, discovery and trial for the principal claims will require many of the same witnesses. No efficiency exists from conducting two fact-based litigations half a continent apart."  The same logic applies here.

As noted, neither side has moved to sever the claims in the case.  But, in urging the Court to invoke pendent venue, plaintiffs maintain that it is appropriate to avoid requiring them to proceed in two separate actions.

I agree that severance of the SP Plaintiffs' claims would likely result in the burden of two separate civil actions.  *O'Neil*, 709 F.2d at 368; *see also Pinson*, 74 F. Supp.3d at 288 n.7; WRIGHT, MILLER & KANE, *supra*, § 1689.  If I were to sever the case, so as to allow the IUPAT Plaintiffs to proceed in Maryland, while either dismissing the SP Plaintiffs, without prejudice, or transferring their claims to a jurisdiction with proper venue, two courts would be evaluating the same contracts and the conduct of the same defendant, and would hold trials involving the same legal issues, with most of the same witnesses.  "No efficiency exists from conducting two fact-based litigations" a few hundred miles apart.  *Def. Distributed*, 30 F.4th at 431.

## 2.  Transfer

Thus far, I have concluded that the IUPAT Plaintiffs have established proper venue in Maryland but the SP Plaintiffs have not done so.  I have also concluded that, in the interests of convenience and efficiency, it is preferable to avoid two separate civil cases.  I must next consider whether it is appropriate to transfer the entire case and, if so, whether to transfer it to the Southern District of Georgia or the Middle District of Tennessee.

As stated, an ERISA case "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found[.]" 29 U.S.C. § 1132(e)(2). The IUPAT Funds maintain their principal place of business in and are administered from Maryland. ECF 11 at 10. The SP Funds maintain their principal place of business in and are administered from Tennessee. *Id*. Thus, venue is proper in the Middle District of Tennessee, but only as to the SP Plaintiffs because the SP Funds are administered there. However, there does not appear to be any basis for venue in Tennessee for the IUPAT Plaintiffs, because the IUPAT Funds are not administered there, defendant does not reside there, and the alleged breach did not take place there.

Miller Painting contends that the entire case could have been brought in federal court in the Southern District of Georgia. ECF 5-1 at 5. According to defendant, the "Complaint recognizes that Miller Painting is a Georgia corporation based in Savannah, Georgia." *Id*. Moreover, defendant points to the CBA on which plaintiffs rely, explaining that the agreement explicitly "applies to work performed" in a specific set of counties in Georgia. *Id*.

Plaintiffs oppose the Motion, stating: "Miller Painting primarily asserts that the District of Maryland is an inconvenient (but again, *permissible*) venue because none of its prospective party witnesses or files are located here. However, Miller Painting insists that the only fix is to relocate this case to Georgia, again, <u>where no Plaintiff has operations, witnesses, documents or direct venue connections</u> (and thus faces the very same challenges or problems that Miller Painting cites as creating an inconvenient forum). This shift in burdens is expressly prohibited by courts as a basis for transferring forums." ECF 13 at 10 (emphasis in ECF 13).

Defendant is a Georgia corporation that transacts business and maintains an office there. Therefore, personal jurisdiction is proper as to them in Georgia. *Daimler AG v. Bauman*, 571 U.S.

117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'") (bracket in *Daimler*) (citation omitted). Moreover, venue exists in the Southern District of Georgia for all plaintiffs because, under the statute, venue is proper where the defendant resides or where the alleged breach took place, both of which are in Georgia.

Under 28 U.S.C. § 1404(a), a district court, "in the interest of justice," and for "convenience," may transfer any civil action to "any other district . . . where it might have been brought." The "preliminary" inquiry focuses on whether the civil action "might have been brought in the destination venue." *Volkswagen*, 545 F.3d at 312 (internal quotations omitted). In order to satisfy that requirement, venue in the transferee court must be proper, and that court must have personal jurisdiction over the defendant. *D2L Ltd.*, 671 F. Supp. 2d at 778.

Because this suit "might have been brought in the destination venue," *i.e.*, the Southern District of Georgia, *Volkswagen,* 545 F.3d at 312, the Court must weigh several factors in considering the motion to transfer under § 1404(a). These include: (1) the weight accorded to plaintiff's choice of venue; (2) the convenience of the witnesses; (3) the convenience of the parties; and (4) the interest of justice. *Plumbing Servs., Inc.*, 791 F.3d at 444. I turn to review the factors.

### (a) Plaintiff's Choice of Venue

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Plumbing Servs., Inc.*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 1988)); *see also, e.g.*, *Arabian v. Bowen*, 966 F.2d 1441 at *1 (4th Cir. 1992) (per curiam) (table); *Lynch*, 237 F. Supp. 2d at 617. Ordinarily, unless the balance of factors points "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748

F.2d 916, 921 (4th Cir. 1984); *see Gilbert*, 32 F. Supp. 3d at 607; *Mamani*, 547 F. Supp. 2d. at 469.  This is particularly true where "'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'"  *comScore, Inc. v. Integral Ad Science, Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)); *see also, e.g.*, *Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1374 (N.D. Ga. 2013) (recognizing that a plaintiff's choice of venue should be afforded substantial deference where "plaintiff has filed suit in his home state"); *Sentry Select Ins. Co. v. McCoy Corp.*, 980 F. Supp. 2d 1072, 1077 (W.D. Wis. 2013) ("Because plaintiff . . . has chosen its home forum in which to litigate, its choice is particularly deserving of deference.").

As indicated, a plaintiff's choice of forum "is ordinarily accorded considerable weight . . . ."  *Lynch*, 237 F. Supp. 2d at 617.  But, "that weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy."  *Id.*; *see also Bannister v. Wal-Mart Stores E., L.P.*, 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) ("[T]he deference given to a plaintiff's choice of forum is proportionate to the relationship between the forum and the cause of action."); *Mamani*, 547 F. Supp. 2d at 473 ("[A] court need not accord the choice as much weight when the 'forum has no connection with the matter in controversy.'") (citation omitted); *Bd. of Trs.*, 508 F. Supp. 2d at 477 (observing that the weight of plaintiff's choice of forum "varies depending on the significance of the contacts between the venue chosen by Plaintiff and the underlying cause of action").

Defendant argues: "Plaintiffs' choice to litigate in this District should not be afforded substantial weight."  ECF 17 at 7.  Defendant contends that this is because Maryland's only connection to the dispute is that the "Funds are alleged to be administered in Maryland."  ECF 5-1 at 5–6.  But, defendant points out that "the collective bargaining agreements were executed in

Georgia, Plaintiffs seek contributions for covered work allegedly performed in Georgia, Miller Painting's alleged failure to submit contributions resulting in breaches of the CBA occurred in Georgia, and Miller Painting's employment records are in Georgia."  ECF 17 at 7.  In addition, "Plaintiffs' attorneys and accountants do not reside in this District."  *Id.*

In response, plaintiffs point to what they describe as ERISA's "national venue provision that allows funds to bring claims in any jurisdiction, regardless of where the defendant is located." ECF 13 at 15.  They characterize the broad choice of venue as a "clear Congressional mandate," by which "courts across the country . . . consistently apply a heightened standard to the first factor" in a venue challenge.  *Id*. at 16.  And, plaintiffs cite district court cases explaining that "Trustees of ERISA funds" may sue "in the district where the plan is administered" because this "promote[s] efficient collection of delinquent contributions" and "ease[s] the burdens of nationwide litigation on fund administrators such as the plaintiff."  *Id.* at 15, 16 (quoting *Trs. of the Nat'l Asbestos Pension Fund v. KC Firestop & Insulation Co., LLC*, PJM-14-3873, 2015 WL 2085486, at *2 (D. Md. May 4, 2015); *Cent. States v. Davidson*, 2007 U.S. Dist. LEXIS 16639, at *8 (N.D. Ill. Mar. 8, 2007); *Plumbers & Pipefitters Nat'l Pension Fund v. T.L. Servs., Inc.*, No. CIV. A. 00-1113-A, 2000 WL 1923515, at *1 (E.D. Va. Sept. 27, 2000)).

Plaintiffs also cite *Orange Cty. IBEW-NECA Lab. Mgmt. Cooperation Comm. v. Pro Tech Eng'g Corp.*, No. 14-CV-04225-LHK, 2015 WL 5591113 (N.D. Cal. Sept. 23, 2015), for the proposition that plaintiffs' choice of venue should be "accorded substantial deference."  ECF 13 at 17.  Moreover, they posit that this decision is "notable because the court retained and upheld the substantial deference required under ERISA's venue selection provision when some, but not all, of the plaintiff plans were administered in the district."  *Id.* at 17 n.3.  But, this case is clearly distinguishable.

In *Orange Cnty. IBEW-NECA Lab. Mgmt. Cooperation Comm.*, 2015 WL 5591113, three of the six ERISA plans were administered in Santa Clara County, California, and the activity that was "central to the dispute . . . occurred at least in part in Santa Clara County." *Id.* at \*4. Therefore, the court gave "substantial deference" to the plaintiffs' choice of the Northern District of California, as opposed to the Central District of California. *Id.* Asking defendant, a Georgia corporation, to litigate in Maryland rather than Georgia is not comparable to deciding venue between the Northern District of California and the Central District of California.

Defendant also cites *Marrero Glass & Metal Inc.*, ELH-18-452, 2019 WL 423409, to support its argument for transfer. *See* ECF 5-1 at 6. There, this Court noted that although the Fund was administered in Maryland, the disputed conduct occurred in Pennsylvania. *Marrero Glass & Metal Inc.*, 2019 WL 423409, at \*4. And, the "weight" accorded to a plaintiff's choice of forum "'is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy.'" *Id.* (citation omitted).

In *Marrero Glass & Metal Inc.*, I determined in the § 1404(a) analysis that transfer from Maryland was favored to avoid duplicative litigation, and I noted that the transferee court in Pennsylvania was "intimately familiar with the relevant facts and allegations set forth in this case as well as the Settlement Agreement that was entered." *Id.* at \*6. Moreover, I stated, *id.*: "Because the Eastern District of Pennsylvania has invested substantial time and energy to become familiar with the facts of this case, transfer would promote judicial economy." Here, judicial economy would be promoted by proceeding in one action.

"Instead of *Marrero*," 2019 WL 423409, plaintiffs ask the Court to consider *Trs. of the National Electrical Benefit Fund v. Kindness General Contractors, LLC* ("*Kindness*"), PJM-23-

3099, 2024 U.S. Dist. LEXIS 130356 (D. Md. July 23, 2024). *See* ECF 13 at 20. There, both funds were administered in Maryland and the employers were located in California. 2024 U.S. Dist. LEXIS 130356, at *2–3. The court denied the motion to dismiss, or in the alternative, to transfer, while making reference to Congress's intention "to give a plaintiffs' choice of forum even 'greater weight.'" *Id.* at *7 (citation omitted). But, this case is inapposite. The SP Funds are not administered in Maryland, and therefore, have not "elected to bring suit in their home forum." *Id.*

To be sure, no court has yet invested substantial time and energy to become familiar with the facts of this case. But, transferring the entire case to Georgia would avoid duplicative litigation and promote judicial economy. I conclude that this factor weighs in favor of transfer.

### (b) Convenience of Witnesses

"Perhaps the most important factor to be considered by a court in passing on a motion to transfer is the convenience of the witnesses." *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000); *accord Mamani*, 547 F. Supp. 2d at 473; *see also* WRIGHT, MILLER & KANE, *supra*, § 3851 at 253 ("The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer under 28 U.S.C.A. § 1404(a)."). However, "the convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial." WRIGHT, MILLER & KANE, *supra*, § 3851 at 278.

Defendant argues that courts must consider the availability of the subpoena process under FED. R. CIV. P. 45 that secures witness attendance at trial, "especially nonparty witnesses . . . in making convenience-transfer determinations." ECF 5-1 at 7 (citing *Fair v. Travel Centers of Am., LLC*, 21-cv-02090-JMC, 2022 WL 579266, at *3 (D. Md. Feb. 25, 2022). I cannot find a reference in *Fair* to the subpoena process, but the court did state: "This Court has found that where there

are no witnesses located in the district, this factor tips in favor of venue transfer." *Fair*, 2022 WL 579266, at \*2 (citing *See Tse v. Apple Computer, Inc.*, No. L-05-2149, 2006 WL 2583608, at \*4 (D. Md. Aug. 31, 2006)).  Plaintiffs respond that "transfer from Maryland to Georgia simply transfers inconvenience of nonparty witnesses from one place to another," which serves "no value."  ECF 13 at 25.

Although the parties point to potential nonparty witnesses in Georgia, ECF 5-1 at 7 and ECF 17 at 9, 10, and auditors located in "New York, Washington, D.C., Boston, Pennsylvania, and Connecticut," ECF 13 at 24, neither side identifies witnesses located in Maryland.  Therefore, this factor tips in favor of venue transfer.

### (c) Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer."  WRIGHT, MILLER & KANE, *supra*, § 3849 at 217.  Notably, "transfer will be refused if the effect of a change of venue would be merely to shift the inconvenience from one party to the other."  *Id.* at 216; *see Pinpoint IT Services, L.L.C. v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 721 (E.D. Va. 2011) ("[A] transfer of venue that merely switches the inconvenience from one party to the other generally will be refused.").

Defendant argues that it is "extremely inconvenienced by the current venue in the District of Maryland because this district is 614 miles away from its base in Savannah, Georgia. . . . The costs associated with frequent travel to Maryland for court proceedings are substantial and particularly taxing for a small business."  ECF 17 at 12.  Moreover, defendant argues that "the principals' absence from the business to attend court hearings could result in unsupervised employees, decreased work productivity, lost work opportunities and operational disruptions.

Those operational disruptions could ultimately affect Miller Painting's reputation and long-term viability." *Id.* (citing ECF 17-1 at 4).

According to defendant, "the majority of relevant documentary evidence is located in the Southern District of Georgia," including defendant's "payroll and monthly contribution reports and payment records, cash disbursement journals, tax records, earnings reports, and independent contractor records." ECF 5-1 at 8 (citing ECF 5-3 at 3). And, "to the extent that any extrinsic evidence of intent is admissible to construe ambiguous CBA terms, that evidence would be located at the Local Union level and with Miller Painting's principals, who are all in Georgia." ECF 5-1 at 8. Defendant contends that the only tie to Maryland seems to be that some plaintiff funds are administered in Maryland, and therefore, some trustees are located in Maryland, but they "are unlikely to be key witnesses in this case." *Id.* And plaintiffs' counsel is located in California and Pennsylvania, not Maryland. *Id.*

In opposition, plaintiffs argue that their "audit of Miller Painting forming the basis of this action was already conducted remotely," and therefore, "unless Miller Painting somehow lost access to copiers and email, the physical location of it records, or any other documents, is unimportant." ECF 13 at 28. They also state, *id.* at 27, that "the Court has recognized that cases are not litigated in the Stone Age."

In reply, defendant contends that this "argument overlooks the fact that Miller Painting may need access to original source documents to dispute the auditor's findings." ECF 17 at 11. In addition, defendant asserts that it "may need to issue subpoenas to the sixteen entities and individuals previously identified for documents to support its defenses," who reside in or do business in Georgia. *Id.*

27

Maryland is obviously a convenient forum for the IUPAT Plaintiffs. But, it is inconvenient for the SP Plaintiffs, and also for some key witnesses and for the defendant. On the other hand, Georgia is a convenient forum for the defendant and some key witnesses, but not for the IUPAT Plaintiffs, the SP Plaintiffs, and some other key witnesses. The proper venues for the SP Plaintiffs are in Tennessee and Georgia. But, the only connection to Tennessee cited by either side is that the SP Plaintiffs' funds are administered there.

### (d) Interests of Justice

A final factor for a court's consideration is whether transfer is in the interests of justice. This factor is "amorphous and somewhat subjective," and allows a court to "consider many things." WRIGHT, MILLER & KANE, *supra*, § 3854 at 313–18. In assessing whether transfer would meet the interests of justice, additional factors that courts consider are the pendency of a related action, the court's familiarity with the applicable law, docket conditions, and the ability to join other parties. *See Bd. of Trustees v. Baylor Heating & Air Conditioning*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988).

"A significant factor in considering the interests of justice is 'avoiding duplicative litigation in courts,' and the Court 'may appropriately consider the conservation of judicial resources and comprehensive disposition of litigation.'" *Mamani*, 547 F. Supp. 2d at 474 (quoting *Cronos*, 121 F. Supp. 2d at 466); *see also* WRIGHT, MILLER & KANE, *supra*, § 3854 ("[M]any courts have transferred to a forum in which other actions arising from the same transaction or event, or which were otherwise related, were pending."). When a similar case is already pending in another district, transfer of related claims is "favored" because it "may facilitate efficient pretrial proceedings and discovery" and also "because it avoids inconsistent results." *D2L Ltd.*, 671 F. Supp. 2d at 783. Moreover, there is "judicial economy in having the same judge consider the same

underlying facts and issues only once[.]"  *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 939 (E.D. Va. 2005); s*ee also D2L Ltd.*, 671 F. Supp. 2d at 783 ("The interest of justice weighs heavily in favor of transfer when a related action is pending in the transferee forum.").

Defendant contends that plaintiffs have not indicated how the Welfare Fund or FTI "would be impacted by the transfer of venue."  ECF 17 at 14.  They add, *id.*:  "[Plaintiffs] have not identified any witnesses that would become unavailable or explained how their travel to the Southern District of Georgia would negatively impact [the Welfare Fund]."  In sum, defendant argues that "transferring to the Southern District of Georgia does not shift the burden to Plaintiffs, but rather helps mitigate the extreme injustice, inconvenience and burden on Miller Painting while the burden on Plaintiffs remains virtually the same."  *Id.*

Plaintiffs maintain that they "are here to seek justice for their participants in the form of earned but unpaid fringe benefit payments by Miller Painting," and that the transfer of the case would "only shift the costs to these very individuals that ERISA was meant to protect."  ECF 13 at 29.  But, plaintiffs also "respectfully believe that the Court should not look to only this action to determine potential financial or justiciable consequences."  *Id.* at 29 n.11.  Plaintiffs are concerned that if Miller Painting's Motion is granted, then plaintiffs, who are national pension funds, "could face venue challenges and potentially forced to litigate in an employer's home state each time they pursue contributions."  *Id.*  This outcome, they argue, "would defeat the entire purpose of ERISA's venue structure (and indeed ERISA itself) as funds would barely break even in the amounts recovered compared to the costs of litigating these issues or facing hundreds of cases in different jurisdictions across the country."  *Id.*

Notably, plaintiffs make a compelling argument for litigating this case in one action.  They state, *id.* at 36:

The IUPAT Funds and SP Funds both conducted an audit of Miller Painting for the time period of January 1, 2019 through December 31, 2023. *See* ECF 1, ¶¶ 23 through 24. The audit was for contributions due and owing based upon the amounts which are determined by the hours worked or paid for by Defendant's employees. *Id*. The audits for the IUPAT Funds and the SP Funds revolved around the same employees, the number of hours those employees worked and their contractual contributions. *Id.*[] The authority to conduct these audits arose under the exact same Bargaining Agreements. *See id.* at ¶¶ 19 through 22. Miller Painting has refused to pay the amounts found due as a result of the same audits by the IUPAT Funds and SP Funds. *See* ECF 1, ¶ 25. Pursuant to these same facts, the IUPAT Funds and SP Funds bring the exact same causes action under ERISA, that Miller Painting breached its statutory and contractual duties under the Bargaining Agreement that governs the IUPAT Funds, the SP Funds and Defendant. *See* ECF 1, ¶¶ 29-40. The legal and equitable relief sought by the IUPAT Funds and SP Funds is also identical. *See id.*, pp. 10-12.

But, plaintiffs cannot have their cake and eat it, too. ERISA's venue provision is clear. IUPAT Plaintiffs have established proper venue in Maryland, but SP Plaintiffs cannot do the same. If plaintiffs wish to litigate the case in one action, then the case cannot be brought in Maryland. A transfer of the case to a jurisdiction with proper venue as to all plaintiffs would enable one judge to consider the entire case. That is an important efficiency that would be lost if the SP Plaintiffs are severed and/or transferred. This circumstance weighs strongly in favor of transfer of the entire case.

"Another element relevant to the interest of justice is a comparison of the docket conditions in the two courts." Wright, Miller & Kane, *supra*, § 3854. In considering this factor, "'the real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'" *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007) (alteration omitted) (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984)). Generally, this factor does not command substantial weight in considering whether to transfer a case. *See, e.g.*, *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 793 (E.D. Va. 2007).

In this case, transfer to Georgia might facilitate a speedier resolution of the case, given that the median time to disposition in the Southern District of Georgia is shorter than in Maryland. During the 12-month period ending December 31, 2024, the median time to disposition was 7.3 months in the District of Maryland but was only 6.4 months in the Southern District of Georgia. Federal Judicial Caseload Statistics, https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distprofile1231.2024.pdf.  Although this element does not command great weight, it slightly favors transfer.

As defendant argues, the records are likely to be located in Georgia.  And, the prospect of a speedier resolution in Georgia carries some weight in favor of transfer.  But, above all, one judge overseeing the entire case, which involves the same defendant, the same bargaining agreements, and the same audits, compels the conclusion in favor of transfer.

## IV.  Conclusion

The IUPAT Plaintiffs have established proper venue in Maryland.  That is the venue of their choice.  In contrast, venue is not proper in Maryland as to the SP Plaintiffs.

Under 28 U.S.C. § 1406(a), the Court "shall" either dismiss the claims as to the SP Plaintiffs "or if it be in the interest of justice, transfer [those claims] to any district or division in which it could have been brought."  *See Williams v. Louisiana Comm. on Bar Admissions*, No. CV 22-1006-SDD-SDJ, 2023 WL 4100495, at *4 (M.D. La. May 12, 2023), *report and recommendation adopted*, CV 22-1006-SDD-SDJ, 2023 WL 4098634 (M.D. La. June 20, 2023). I see no reason to dismiss the case as to the SP Plaintiffs.  Rather, the interests of justice, convenience, and efficiency weigh in favor of a transfer of the entire case.  And, between

Tennessee and Georgia, for the reasons stated, the transfer must be to the Southern District of Georgia.[4]

      An Order follows, consistent with this Memorandum Opinion.


Date:  May 13, 2025                                        _____/s/_____
                                                         Ellen Lipton Hollander
                                                         United States District Judge

---

[4] Defendant seeks a transfer to the Savannah Division.  I leave it to the District of Georgia to determine the appropriate Division.